714 S.E.2d 313

**In the Matter of Craig J. POFF, Respondent.**

**No. 27028.**

Supreme Court of South Carolina.

Heard June 8, 2011.

Decided Aug. 22, 2011.

38

Lesley M. Coggiola, Disciplinary Counsel, and C. Tex Davis Jr., Senior Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Desa Ballard and Harvey MacLure Watson III, both of Ballard, Watson and Weissenstein, of W. Columbia, for Respondent.

PER CURIAM.

In this attorney discipline matter, both Craig J. Poff (Respondent) and the Office of Disciplinary Counsel (ODC) take exception to the findings and recommendations of the hearing panel of the Commission on Lawyer Conduct (Panel). After a full hearing, two Panel members recommended a six month suspension, and two Panel members recommended a ninety day suspension of Respondent from the practice of law. The Panel additionally recommended Respondent be required to pay the costs of the proceedings, an appropriate fine, and complete the South Carolina Bar's Legal Ethics Practice Program and Trust Account School (LEAP program) prior to reinstatement to the practice of law. We order Respondent's suspension from the practice of law for a period of six months, and additionally require Respondent to complete the LEAP program and reimburse the ODC for the costs of the proceedings prior to reinstatement. However, we decline to impose a fine.

## PROCEDURAL BACKGROUND

The ODC filed formal charges against Respondent on January 21, 2010, alleging the violation of a variety of Rules of Professional Conduct (RPC) arising out of his dealings with a former assistant (Assistant). The ODC alleged Respondent aided Assistant in committing Medicaid Fraud, failed to specify and memorialize a fee agreement with Assistant for representing her in a divorce proceeding, disclosed confidential information about that divorce settlement with a third party, paid Assistant on several occasions out of his trust account, and sent a series of e-mails to a third party containing unauthorized photographs of Assistant and language objectifying Assistant in a sexual manner during the time she was his client. Respondent denied the majority of the allegations, but acknowledged he revealed confidential information about Assistant's divorce settlement to a third party. On May 11 and 12, 2010, the Panel heard testimony and arguments relating to

 

the formal charges. The Panel issued its report on January 4, 2011 with the recommendations listed above.

## FACTS

Respondent is a sole practitioner in Beaufort, South Carolina and has been a member of the South Carolina Bar since 1990. Respondent was admitted to the Maryland Bar in 1979. In 1993, Respondent opened his own practice, renting space from another attorney. While working out of this office, Respondent came to know Assistant, who was then working as a legal assistant for the other attorney. Respondent moved offices in 1995 and did not have contact with Assistant until June 2005, when Assistant made an appointment to meet with him to discuss obtaining a divorce from her husband.

### *The Fee Agreement*

Prior to meeting with Respondent, Assistant consulted two other attorneys about her divorce, but was unable to pay the retainer fee they required. At their initial meeting on June 4, 2005, Respondent quoted Assistant a retainer fee of $1,500, but she informed him she could not pay that amount without an alternative arrangement. Because Assistant was not working during the month of June, Respondent suggested she come to work for him on a part-time basis to pay off the retainer fee. The parties did not execute a written retainer agreement. The terms of their verbal agreement were uncertain. Assistant believed she would be working the entire summer, while Respondent testified the arrangement was for her to work for two weeks to pay off the fee. On June 23, 2005, after two weeks of work, Respondent began paying Assistant a regular pay check. Shortly thereafter, he asked her to work for him permanently, and Assistant agreed. Over the next two years, Respondent represented Assistant in her divorce action and in alimony and child support collection efforts without requesting payment for the services.

### *Respondent's Trust Account and Payments to Assistant*

During Assistant's employment with Respondent, he wrote checks to her directly from his trust account on four occasions. Respondent testified one of these checks was for child support, given to him by Assistant's former mother-in-law. Assistant denies the check was for child support. Respondent's

trust account records indicate two checks were for "wages," and a third check was for a "bonus." In his Response to Formal Charges, Respondent admitted to paying Assistant bonuses directly from his trust account, but asserted there was no "meaningful difference between that needlessly convoluted process" of disbursing money first to his operating account before writing a bonus check to employees and the shortcut he employed by paying Assistant directly from the trust account. At the hearing, Respondent admitted this action was an improper "shortcut." Respondent further admitted he most likely gave Assistant these three checks as a share of fees from a personal injury settlement. Respondent also paid Assistant periodic bonuses based on a percentage of outstanding fees she collected or as a percentage of any retainer fees Respondent collected when Assistant referred clients.

### Assistant's Medicaid Benefits

During their initial consultation meeting on June 4, 2005, Assistant testified she told Respondent her income with the local school district qualified her for Medicaid, and that she needed to maintain that insurance for herself and her two children. Respondent denies they discussed Medicaid at this meeting. Respondent did not provide Assistant health insurance benefits because the premium quotations Respondent received were too expensive. Assistant testified Respondent knew it was important for her to remain a part-time employee so she could qualify for Medicaid benefits. From June 7, 2005 until January 31, 2006, Respondent reported Assistant's income using a 1099 form.[1] In December, 2005, Assistant began working full-time for Respondent. Assistant testified she and Respondent discussed that her increased hours and pay could jeopardize her ability to receive Medicaid benefits. She claims Respondent proposed the idea of splitting her income between an IRS 1099–Misc Form and a W–2 form.[2] Accord-

---

1. The IRS's 1099 Miscellaneous form is used to report the income of non-employees, typically independent contractors. Income distributed on a 1099 basis is not subject to federal or state income tax withholding.

2. Because the Department of Health and Human Services (DHHS) only reviews an applicant's W–2 income, splitting her income in this fashion would allow Assistant to maintain her Medicaid benefits.

ing to Assistant, Respondent suggested that her assistance with his bankruptcy practice could be reported as 1099 income and her secretarial work could be reported as W-2 income. She testified that during this discussion she relayed her fear of going to jail if DHHS became aware of her actual income, and he told her, at worst, she would have to pay the money back and that she would get a letter stating she was disqualified from ever receiving Medicaid again.

Respondent denies all of Assistant's claims that he initiated and assisted her in defrauding DHHS to receive Medicaid benefits. Respondent maintains he paid Assistant in this fashion at her request and he naively assumed she preferred to split her compensation this way for tax purposes. The record indicates that Respondent reported all of Assistant's income to the IRS, and paid all required taxes on her wages.

On at least two occasions, Assistant submitted letters understating her income to DHHS for the continued receipt of Medicaid benefits. These letters were written on Respondent's letterhead and purportedly bore his signature, but Assistant admitted she signed Respondent's name to resemble his signature on both letters. Assistant maintains Respondent authorized her to sign his name to the letters and approved the letters before she sent them to DHHS. Respondent, on the other hand, alleges Assistant submitted these letters on her own accord, without his knowledge, and he first learned of the letters from an Attorney General investigator after Assistant left his employment.

The first letter was dated December 19, 2005, when Respondent was in Florida attending to matters related to his father's death. Assistant claims that on December 19th, she discussed with Respondent by phone that her verification was expiring soon, and he told her to draft the letter, sign it, and mail it because they did not have the time to wait. She testified she nevertheless held the letter until the next day when he returned, and he again reiterated she should mail it as soon as possible so her Medicaid benefits would not be interrupted. She stated he even made a comment about how close the signature looked to his. Respondent denies all of Assistant's testimony regarding this letter.

Assistant printed these letters on letterhead containing only Respondent's name, although the printed letterhead used in the office during Assistant's employment was embossed with her name, as legal assistant. Assistant claims the office kept supplies of both letterheads. Respondent asserts Assistant altered the letterhead to remove her name to prevent any perception she was a full-time employee.

On July 30, 2007, two months after Assistant left Respondent's employment, Respondent replied by letter to a DHHS questionnaire, notifying the agency that Assistant may have underreported her income to continue receiving Medicaid benefits. Notably, in early May, Respondent received notice that Assistant planned to file a malpractice suit against him. On August 27, 2007, Respondent made a complaint to the Office of the Attorney General that Assistant engaged in Medicaid fraud. On September 24, 2007, and again on October 9, 2007, Respondent sent letters to the Attorney General's investigator detailing the amount he paid Assistant over the course of her employment, and denying that he had any knowledge of the renewal letters sent to DHHS. Authorities arrested Assistant for Medicaid fraud and detained her on October 19, 2007. She acknowledged wrongdoing and entered an agreement for pre-trial intervention.

### Disclosure of Confidential Client Information

Respondent admits to violating Rule 1.6(a), RPC, Rule 407, SCACR, by disclosing private details of the circumstances surrounding Assistant's divorce action to his friend through e-mail. These disclosures included intimate details about Assistant's marital relationship and the financial settlement Respondent secured for her.

### Details of Assistant's Departure from Employment

Assistant worked for Respondent from June 7, 2005 until May 4, 2007. During this time, they shared a good working relationship and Assistant considered them to be friends. Assistant claims she was unaware that Respondent had feelings beyond friendship until May 2, 2007, when Respondent gave her a romantic birthday card coupled with a typed note that revealed his feelings for her.

On May 4th, while looking in Respondent's office for a client file, Assistant noticed an e-mail on Respondent's computer of which she was the subject. The e-mail referenced Assistant in a sexually explicit manner. Assistant immediately printed the e-mail and left the office with the intention of never returning.

At home, Assistant used Respondent's password to access his e-mail and printed the e-mails Respondent exchanged with his friend during the time she worked for Respondent. These e-mails contained offensive and objectifying language about Assistant, unauthorized photographs of Assistant, and confidential information about her divorce settlement. It is undisputed she accessed Respondent's e-mails for her own purposes and not in furtherance of any duty she owed Respondent as an employee.

### Other Relevant Legal Proceedings

After Assistant quit working for Respondent, the South Carolina Employment Security Commission (SC ESC) awarded Assistant unemployment benefits upon finding she had been sexually harassed at work. Additionally, Assistant filed a legal malpractice suit against Respondent and settled the suit for $300,000, $25,000 of which Respondent paid personally. Finally, during the pendency of this lawsuit, Assistant executed a deed transferring her interest in her home to a third party. This deed included a handwritten notation, "Prepared by Law Office of C.J. Poff." Respondent did not prepare the deed and testified the notation was made in Assistant's handwriting. Assistant denies making the notation. The deed was subsequently corrected.

### The Panel's Findings

The Panel found Respondent in violation of the following Rules of Professional Conduct, Rule 407, SCACR:
- Rule 1.6(a) (Confidentiality of Information)
- Rule 1.15(a) (Safekeeping of Property)
- Rule 5.4(a) (Professional Independence of a Lawyer)
- Rule 8.4(a), (d), and (e) (Misconduct)

The Panel additionally found Respondent in violation of the following Rules of Lawyer Disciplinary Enforcement (RLDE), Rule 413, SCACR:

- Rule 7(a)(1) (violating or attempting to violate the RPC)
- Rule 7(a)(5) (conduct intending to pollute administration of justice)
- Rule 7(a)(6) (violating lawyers' oath of office)

Respondent does not take exception to the Panel's finding that he violated Rules 1.6(a) and 1.15, RPC. However, Respondent takes exception to the remaining Rule violations as found by the Panel.

The Panel found that Respondent *did not* violate the following Rules of Professional Conduct, Rule 407, SCACR:

- Rule 1.2(d) (Scope of Representation)
- Rule 1.5(b) (Fees)
- Rule 1.7(a)(2) (Conflict of Interest: Current Clients)
- Rule 1.8(a) and (b) (Conflict of Interest: Specific Rules)
- Rule 1.16(a)(1) (Declining or Terminating Representation)

The ODC does not take exception to the Panel's finding that Respondent did not violate Rules 1.5(b) and 1.8(b). However, the ODC takes exception to the Panel's findings on the remaining Rules listed.

## Aggravating Factors

The Panel considered Respondent's prior disciplinary history an aggravating factor in recommending a sanction. This Court suspended Respondent for a period of sixty days in connection with his handling of a real estate closing. *In re Poff,* 366 S.C. 542, 623 S.E.2d 642 (2005). Additionally, the Panel determined Respondent made false statements and engaged in deceptive practices during the disciplinary process. Finally, the Panel found Respondent failed to acknowledge the wrongful nature of his conduct.

## Mitigating Factors

The Panel considered in mitigation of the charges the character testimony of Felix "Butch" Clayton that Respondent is "a hard worker and he has a good reputation as an attorney throughout," and Respondent's personal contribution of $25,000 toward a malpractice settlement with Assistant.

## Issues

I. Whether the Panel had sufficient evidence to support its finding that Respondent knowingly aided Assistant in misrepresenting her income, in violation of Rules 8.4(d) and (e), RPC, Rule 407, SCACR.

II. Whether the Panel properly considered aggravating circumstances.

III. Whether Respondent had sufficient notice he was subject to discipline under Rule 5.4, RPC, Rule 407, SCACR.

IV. Whether the Panel's finding that Respondent violated Rules 7.4(a)(5) and (6), RLDE, Rule 413, SCACR lacked sufficient definiteness.

V. Whether the Panel erred in finding Respondent did not violate Rules 1.2(d), 1.7(a)(2), 1.8(b), and 1.16(a)(1), RPC, Rule 407, SCACR.

VI. Whether the Panel's recommendation of a ninety day or six month suspension is a sufficient penalty for Respondent's actions.

## Standard of Review

The sole authority to discipline attorneys and decide appropriate sanctions after a thorough review of the record rests with this Court. *In re Thompson,* 343 S.C. 1, 10–11, 539 S.E.2d 396, 401 (2000). In such matters, this Court may draw its own conclusions and make its own findings of fact. *Id.* Nonetheless, the findings and conclusions of the Panel are entitled much respect and consideration. *Id.*

## Analysis

Respondent has not taken exception to the Panel's finding he violated the Rules relating to the disclosure of confidential client information, Rule 1.6(a); the safekeeping of a lawyer's trust account, Rule 1.15(a); and violating the Rules of Professional Conduct, Rule 8.4(a). The Panel found Respondent's failure to reduce his fee agreement with Assistant to writing did not violate Rule 1.5(b) because the Rule does not require a fee agreement to be in writing. The Panel also found the ODC failed to establish Respondent violated Rule 1.8(a) by

entering into a business transaction with his client. The ODC does not take exception to these findings. By not taking exception, the parties are deemed to have accepted the Panel's findings of fact, conclusions of law, and recommendations as to these Rules. Rule 27(a), RLDE, Rule 413, SCACR. Therefore, as an initial matter, we find Respondent violated Rules 1.6(a), 1.15(a), and 8.4(a), RPC, Rule 407, SCACR, but that he did not violate Rules 1.5(b) and 1.8(a), RPC, Rule 407, SCACR, as charged.

## I. Rules 8.4(d) and (e), RLDE (Misconduct)

Respondent takes exception to the Panel's finding that he violated Rules 8.4(d) and (e) by knowingly aiding Assistant in committing Medicaid fraud. In an attorney discipline action, the ODC is required to establish by clear and convincing evidence a violation of the charged Rule. Rule 8, RLDE, Rule 413, SCACR. In our opinion, the hearing testimony and admissible exhibits, as a whole, establish that Respondent knowingly aided Assistant in misleading DHHS as to Assistant's income.

This issue presents a classic case of "he said, she said." Assistant gave detailed testimony of the conversations she and Respondent had regarding her need to maintain Medicaid coverage, his suggestion that they split her income between a 1099 and W–2 form, and their exchanges about the verification letters to be sent to DHHS. Respondent denies ever having these conversations and maintains Assistant asked him to split her income and he naively complied. The Panel found Assistant's testimony to be more credible than Respondent's. A reading of the record as a whole convinces us of the same. Although the Panel held inadmissible the e-mails and pictures exchanged between Respondent and his friend, the ODC read them into evidence for impeachment purposes. The evasive and patently dishonest manner in which Respondent answered questions about the documents, in our view, denigrates his credibility in this factual determination. For instance, the ODC asked Respondent about pictures taken of Assistant in the office, a space only they shared, and taken of her walking outside the office from the vantage point of Respondent's office window. Respondent testified he did not recall taking any of the pictures, although he knew of no one else who could

have taken them. The ODC produced over seventy e-mails ostensibly exchanged between Respondent and his friend. Respondent testified he could not recall writing any of the content of the e-mails. Although it is conceivable that one might not specifically recall writing every word of past correspondence, we believe it unlikely that Respondent does not remember taking *any* of the pictures or writing *any* of the content included in approximately eighty exhibits. Respondent's testimony regarding the e-mails and pictures calls his credibility into question.

Furthermore, Respondent had a personal interest in assuring Assistant maintained her Medicaid benefits because he wished to bring her on full time, but he was either unwilling or unable to pay the costs of her health insurance. The record establishes their close relationship and Respondent's desire to help Assistant in her personal matters. Respondent's interest in assuring Assistant maintained health coverage weighs in our factual determination that Respondent aided Assistant in misrepresenting her income to the government.

Although Respondent testified he was unaware of the specifics of Assistant's Medicaid coverage, we believe he was fully apprised of her coverage, having represented her during her domestic case. With knowledge of her dependence on Medicaid, Respondent testified he believed Assistant requested the split in income for legitimate tax planning purposes, and that it suddenly "dawned on him" a month after Assistant left his employment, and shortly after he was notified she planned to pursue a legal malpractice suit against him.

In its entirety, we find Assistant's rendering of the facts regarding the representation of her income more credible than Respondent's. Therefore, we conclude Respondent violated Rules 8.4(d) and 8.4(e), RCP, Rule 407, SCACR.

## II. Sufficient Notice of Discipline

Respondent argues he did not receive sufficient notice he was subject to discipline under Rule 5.4(a), which prohibits a lawyer from sharing fees with non-lawyers, because the ODC did not include this Rule in its list of Rule violations in the Notice of Formal Charges, and the issue was not raised at the hearing. Formal charges must give the lawyer fair and

adequate notice of the nature of the alleged misconduct. Rule 22, RLDE, Rule 413, SCACR. We believe Respondent had adequate notice he could be sanctioned under Rule 5.4(a). The ODC's formal charges included the allegation that Respondent committed misconduct by providing "[Assistant] with periodic bonuses based on a percentage of any outstanding fees collected or a percentage of the retainer fee paid to Respondent from any referrals she brought into Respondent's office." (Notice of Formal Charges at 3.) Respondent denied that allegation in his reply, explaining the bonuses were discretionary and given on an *ad hoc* basis, and stating the bonuses "cannot be reasonably categorized as any sort of 'fee-sharing' beyond the common sense notion that general firm proceeds create funds for general employee compensation." (Resp. to Formal Charges at 6.) The ODC's allegation of fee sharing in its Notice of Formal Charges, and Respondent's subsequent denial of that claim is enough to establish he had fair and adequate notice of potential sanctions for violating this Rule.

█ As to the merits of this issue, the record includes clear and convincing evidence Respondent violated the fee sharing prohibition by sharing a portion of settlement and retainer fee proceeds with Assistant. The only exception to the prohibition against fee sharing that might apply is under subsection 4, which states, "a lawyer ... may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement." Rule 5.4(a)(4), RPC, Rule 407, SCACR. Respondent stated in his Response to Formal Charges he converted the fees to a "one-time bonus," and that the bonuses were "arbitrary" and "discretionary." This type of bonus does not fall within the exception of Rule 5.4(a)(4), which allows fee sharing as part of a compensation plan. Therefore, we find Respondent in violation of Rule 5.4(a), RPC, Rule 407, SCACR.

### III.  Aggravating Factors

Respondent takes issue with two of the aggravating factors considered by the Panel when determining appropriate sanctions: Respondent's submission of false evidence, statements, or other deceptive practices during the disciplinary process and his refusal to acknowledge the wrongful nature of his

conduct. Respondent denies his involvement with the Medicaid fraud, and argues the Panel's finding that he lied on the stand is a direct incorporation of its finding he committed the fraud. He additionally argues the Panel improperly considered his evasive and indirect responses to questioning about the e-mails and photographs because this evidence was excluded. The ODC read the e-mails into evidence and referenced the photographs for impeachment purposes, so in our opinion, it was within the Panel's purview to consider the veracity of Respondent's responses an aggravating factor. Regardless, this Court has the sole authority to decide an appropriate sanction for Respondent, and considering only Respondent's disciplinary history as an aggravating factor, a sanction of six months suspension from the practice of law is merited for his misconduct.

## IV. Definiteness of Findings under Rules 7.4(a)(5) and (6), RLDE

Respondent argues the Panel Report lacked sufficient definiteness when finding Respondent in violation of Rules 7.4(a)(5) and (6), and therefore Respondent had no basis upon which to take exception to those findings. Rule 7, RLDE, merely enumerates the grounds on which a lawyer may be disciplined. Rule 7.4(a)(5) provides a venue for discipline when a lawyer engages in conduct tending to pollute the administration of justice or conduct that brings disrepute to the legal profession. Respondent's assistance in deceiving the government, engagement in fee sharing, mishandling of his trust account, and improper disclosure of confidential client information to a third party certainly brought disrepute to the legal profession. Rule 7.4(a)(6) provides a ground for discipline when a lawyer violates the oath of office. Respondent's actions caused him to violate his oath that he would "respect and preserve inviolate the confidences of my clients" and would "maintain the dignity of the legal system." Rule 402(k), SCACR. We do not believe it was necessary for the Panel to expound upon its reasoning for finding these grounds for discipline, as they are commensurate with its finding that Respondent committed numerous violations of the Rules of Professional Conduct. Like the Panel, we find Respondent in

violation of Rule 7(a)(1), 7(a)(5), and 7(a)(6), RLDE, Rule 413, SCACR.

## V. Exceptions taken by the ODC to the Panel's findings

### A. Rule 1.2(d), RPC, Rule 407, SCACR
### (Scope of Representation)

■ The ODC argues the Panel erred in finding that Rule 1.2(d) was inapplicable to Respondent. We agree.

Rule 1.2(d) states that a lawyer may not counsel or otherwise assist a client in conduct the lawyer knows is criminal or fraudulent. The Panel found that the scope of Respondent's representation of Assistant was limited to the domestic matter, and because she was not his client for purposes of qualifying for Medicaid benefits, this Rule did not apply. We do not interpret Rule 1.2(d) as narrowly. The Rule seeks to prevent attorneys from perpetuating fraud or crime by leveraging the influence and knowledge gained through an attorney-client relationship. There is nothing in the Rule limiting its application to criminal or fraudulent activity that spawns from the underlying representation. Given our belief that Respondent aided Assistant in misrepresenting her income to DHHS during the time Assistant was Respondent's client, we find him in violation of Rule 1.2(d), RPC, Rule 407, SCACR.

### B. Conflict of Interest and Terminating Representation under Rules 1.7(a)(2) and 1.16(a)(1), RPC, Rule 407, SCACR

■ The ODC takes exception to the Panel's finding that Respondent's romantic feelings toward Assistant did not create a conflict of interest under Rule 1.7(a)(2). In this case, a violation of Rule 1.7(a)(2) necessarily invokes a violation Rule 1.16(a)(1), which provides that a lawyer should discontinue representation of a client if continued representation will result in a violation of the Rules. The Panel found there was no evidence that Respondent's personal feelings toward Assistant negatively affected his representation of her in the domestic case. We believe it is ill-advised to represent, or to continue to represent, a client for whom the lawyer harbors romantic feelings. However, we agree with the Panel's finding that Respondent did not violate these Rules. Respondent's unrevealed romantic interest in Assistant, in the ab-

sence of any evidence of its effect on his representation, does not, in our view, represent a conflict that rises to the level of a Rule violation. Therefore, we accept the Panel's finding that Respondent did not violate Rules 1.7(a)(2) and 1.16(a)(1).

### C. Conflict of Interest under Rule 1.8(b), RPC, Rule 407, SCACR

■ The ODC takes exception to the Panel's finding that Respondent's action of reporting Assistant's Medicaid fraud to authorities did not violate Rule 1.8(b), which prohibits a lawyer from using "information *relating to representation* of a client to the disadvantage of the client...." Rule 1.8(b), RPC, Rule 407, SCACR (emphasis supplied). We believe this Rule speaks for itself. Although Respondent's report to the authorities may be considered retaliatory, in our opinion, this Rule is not applicable to Respondent's conduct because Assistant's receipt of Medicaid benefits was not related to Respondent's representation of her in the domestic matter. Therefore, we find that Respondent did not violate Rule 1.8(b), RPC, Rule 407, SCACR, as charged.

## VI. The Panel's Recommendation

The ODC takes exception to the Panel's recommendation that Respondent should receive a definite suspension of only ninety days or six months. The ODC urges this Court to impose, at a minimum, a nine month suspension so that, prior to his reinstatement, Respondent must appear before the Committee on Character and Fitness. We believe Respondent's conduct, aggravated by prior disciplinary history, warrants a six month suspension from the practice of law.

■ Respondent admitted to sharing with his friend confidential information about Assistant's domestic matter. This included intimate information about Assistant's finances, as well as her physical relationship with her husband. We believe the nature of Respondent's disclosure to be the most offensive type. Additionally, Respondent engaged in the practice of fee sharing, aggravated by paying those shared fees to Assistant directly out of his trust account. This trust account mishandling, if unchecked, could put other clients' money at risk. Finally, we believe Respondent knew of Assistant's plan to underrepresent her income to DHHS, and aided her in doing so by splitting her income between W–2 and 1099 forms.

Therefore, we believe Respondent's egregious conduct warrants a six month suspension.

## CONCLUSION

In sum, we find Respondent improperly disclosed confidential client information to a third party, mishandled his trust account, engaged in fee sharing with a non-lawyer, and aided Assistant in misrepresenting her income to the government. For these offenses, we find Respondent violated Rules 1.2(d), 1.6(a), 1.15(a), 5.4(a), 8.4(d), and 8.4(e), RPC, Rule 407, SCACR, and Rules 7(a)(1), 7(a)(5), and 7(a)(6), RLDE, Rule 413, SCACR. Considering this misconduct, and Respondent's prior disciplinary history, we order Respondent's suspension from the practice of law for a period of six months. We accept the Panel's additional recommendations that Respondent be required to pay the costs of these proceedings and complete the LEAP program prior to reinstatement into the practice of law. However, we decline to impose a fine.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.