723 S.E.2d 586

**In the Matter of William H. JORDAN, Respondent.**

**No. 27101.**

Supreme Court of South Carolina.

Heard Jan. 11, 2012.

Decided March 7, 2012.

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, both of Columbia, for Office of Disciplinary Counsel.

Gedney M. Howe, III, of Charleston, for Respondent.

PER CURIAM.

Respondent received a nine-month suspension [1] in October 2009 following his successful completion of a pretrial intervention program for several drug-related charges [2] and dismissal of traffic charges.[3] *In re Jordan,* 385 S.C. 614, 686 S.E.2d 682 (2009). After he filed a petition for reinstatement but before that request was decided by this Court, additional disciplinary complaints relating to matters occurring before respondent's arrest were received. As a result, the petition for reinstatement was held in abeyance. Respondent admitted all the disciplinary charges made in the second complaint, and after an evidentiary hearing, a Panel of the Commission on Lawyer Conduct (Panel) recommended respondent be given an eighteen-month suspension, retroactive to his suspension on October 26, 2009, that two conditions be imposed upon his reinstatement to the practice of law, and that he be required to

---

1. Prior to his suspension, respondent had practiced law in the Charleston area for many years.

2. Respondent had been charged with possession of cocaine with intent to distribute, possession within proximity of a school, possession of marijuana, and possession of drug paraphernalia.

3. Following too closely, failure to surrender a driver's license, and driving under suspension.

4

pay the costs of the proceeding.[4] Neither respondent nor the Office of Disciplinary Counsel (ODC) has objected to this recommended sanction.

 This Court has the sole authority to discipline attorneys and to determine the appropriate sanctions after thoroughly reviewing the record. While we may make our own findings of fact and draw our own conclusions, the findings and conclusions of the Panel are entitled to much respect and consideration. *In re Poff*, 394 S.C. 37, 714 S.E.2d 313 (2011). After conducting our review, we agree with the Panel's findings of fact and with its recommended sanction.

## FACTS

The Panel found respondent committed five acts of misconduct:

### A. *Trust Account Counter Withdrawals and Checks Written to Cash*

 Rule 417(b)(2), SCACR, requires that all withdrawals from an attorney's trust account be made either by a check payable to a named payee or by authorized bank transfer. Between February and April 2008, respondent withdrew $8,950.00 from his trust account by use of counter withdrawals and by checks made payable to cash. He took the funds believing he was entitled to the money as undisbursed legal fees, but was unable to prove his entitlement because he did not keep proper records, in violation of Rule 1.15(a), Rules of Professional Conduct (RPC), Rule 407, SCACR, and Rule 417(a), SCACR. Respondent used the funds received for his own purposes, but replaced them with money taken from his operating account and from personal funds. For doing so, he was found to have violated Rules 1.15(a), 1.15(d), and 8.4(d), RPC.

### B. *Unidentified Disbursements from Trust Account by Checks Payable to Respondent*

Between February 2006 and May 2008, respondent issued four checks payable to himself from his trust account without

---

4. The costs total $1,328.47.

identifying any case or client on the check. The four checks totaled $5,650.00, and respondent restored this amount to his trust account. At the time these checks were written, respondent believed he had earned fees, but because of his failure to comply with the record-keeping requirements of Rule 1.15(a), RPC, and Rule 417, SCACR, he could not document this. By his conduct, respondent violated Rules 1.15(a), 1.15(d), and 8.4(d), RPC.

### C. *Client A Matter*

▇▇▇ Respondent conducted two real estate transactions on behalf of Client A. In each transaction, the HUD–1 settlement statement prepared by respondent was inaccurate. In one case, respondent disbursed $8,764.65 less than he received, and when respondent was suspended, this money was not in respondent's trust account, in violation of Rule 1.15(a) and (d), RPC. In the second case, a subaccount was underfunded by $8,808.89, again in violation of Rule 1.15(a) and (d), RPC.

Respondent has repaid Client A the $8,764.65 erroneously withheld from him. Respondent did not timely discover the errors as he was not reconciling his accounts as required by Rule 417(a)(8), SCACR.

### D. *Records/Reconciliation*

▇▇▇ Respondent's assistant oversaw respondent's accounts. He failed to review her reconciliations or otherwise supervise her activities in violation of Rule 5.3, RPC, and Rule 417, SCACR.

As a result of respondent's failure to oversee his assistant's work, the assistant was able to write checks drawn on respondent's trust account by forging his signature. She wrote eight checks to herself between May 2006 and March 2008. These checks totaled $16,704.67. During the period between January 2006 and January 2008, the assistant wrote twenty-nine checks payable to her personal creditors totaling $42,018.36. Respondent was made aware of the shortages in his trust account but not the reasons for them, and made deposits from his personal funds and operating account to make up the shortfalls.

6

### E. *Client B*

■ Respondent borrowed $40,000 from Client B and although he repaid the money, he failed to comply with the disclosure and consent requirements of Rule 1.8(a), RPC.

## SANCTION

■ The Panel recognized that disbarment was ordinarily the appropriate sanction for a lawyer who misappropriated client funds or whose failure to supervise staff resulted in their misappropriation of client funds. While it found the facts demonstrated a pattern of serious misconduct over a significant period of time thereby warranting a substantial sanction, it also found mitigating circumstances. First, respondent made a good faith effort to make restitution once the disciplinary investigation revealed the trust account issues, resulting in full restitution and no client losses. Second, respondent cooperated fully. Third, respondent presented significant and compelling evidence in support of his good character and reputation from fellow Bar members.

The Panel also found that respondent's use of illegal drugs was a significant causative factor in his ethical misconduct, but that his "subsequent rehabilitation is so substantial and compelling that it should be considered in mitigation." We agree that respondent's actions following his arrest have been exemplary, demonstrating most especially a sincere and diligent effort to overcome the substance abuse issues which led to his misconduct.

Respondent was arrested on a Friday, sought counsel from an attorney known to the local Bar as an expert on substance abuse issues on Tuesday, began attending AA meetings on Saturday, and self-reported his arrest. He immediately entered an intensive rehabilitation program run by MUSC. Respondent went to 90 AA meetings in his first 90 days, completed the rehabilitation program, began counseling sessions with one of the MUSC therapists (which continue years later), and attended Wednesday night relapse prevention meetings. Respondent has worked on a golf course grounds crew during his suspension.

Respondent's AA sponsor and Robert Turnbull, director of the Lawyers Helping Lawyers Program, testified on respon-

dent's behalf before the Panel. The sponsor testified to respondent's deep and abiding commitment to the tenets of AA. Mr. Turnbull praised respondent's efforts to maintain his sobriety, testifying the respondent was one of the few attorneys he has worked with who "gets it."

## CONCLUSION

We find that respondent violated Rules 1.15(a), 1.15(d), 1.8(a), 5.3, and 8.4(d), RPC, and Rule 417, SCACR. Further, we find in light of respondent's most impressive mitigation showing that the appropriate sanction is an eighteen-month suspension, retroactive to October 26, 2009. In addition, he shall be responsible for the payment of costs. Upon reinstatement to the practice of law, he shall enter a two-year contract with Lawyers Helping Lawyers and file quarterly reports with the Commission of Lawyer Conduct during the contract period, and for these first two years he shall also submit quarterly reports regarding all trust account activity to the Commission.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.